Sanders v. Boy Scouts 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-95-00389-CV







Sylvia Sanders, Appellant



v.



Capitol Area Council, Boy Scouts of America, Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 63,384, HONORABLE GUY HERMAN, JUDGE PRESIDING







 The opinion filed herein on July 17, 1996 is withdrawn, and the following is issued in lieu
thereof.

 Appellee Capitol Area Council, Boy Scouts of America ("Council") sought to probate the
will of Mary Lavinia Griffith ("decedent"). Appellant Sylvia Sanders, the daughter and only heir at law of
the decedent, contested the will and, in a separate proceeding, sought a declaration that an irrevocable
inter vivos trust created by the decedent, which was executed before the will and placed all her property
in trust, was valid and that the trust assets passed to Sanders pursuant to the trust. The Council brought
its own declaratory judgment action seeking a declaration that the trust was invalid and that the decedent's
property passed pursuant to her will or, alternatively, if the trust was valid, that the Council was the
secondary beneficiary under the trust. All three actions were consolidated into one proceeding in Travis
County.

 The Council moved for summary judgment, which the trial court granted on the basis of a
unique blend of the Council's two theories. On appeal, Sanders asserts (1) that the trial court granted the
summary judgment on a ground not presented in the motion, and (2) that the summary-judgment evidence
did not show that the Council was entitled to judgment as a matter of law. We agree with Sanders on the
first point and will reverse the judgment and remand the cause.



FACTUAL AND PROCEDURAL BACKGROUND


 Before her death, the decedent executed an inter vivos trust instrument, which provides
that it is "irrevocable and shall not be altered, amended, revoked, or terminated by the trustor or any other
person." (1) The document did, however, reserve in the decedent "the right to add, delete, or replace any
Secondary Beneficiary or alter disbursement directions to any Secondary Beneficiary." The Council refers
to this language in the trust document as a power of appointment. (2) The decedent was the primary
beneficiary of the trust and was to receive all income from the trust for life. Upon her death, the income
was to be distributed to the secondary beneficiary, and ultimately the corpus was to be distributed to the
remaindermen. The decedent purported to place all of her property in the trust, including a 5000-acre
ranch located in Bastrop County.

 The trust instrument named William Campbell and G. Steven McElroy as trustees. Article
I of the trust document, which was titled "Trust Participants," lists "the legal heirs of Mary Lavinia Griffith"
as both the secondary beneficiary and the remaindermen. Article II, titled "Beneficiaries," states:



 A. The Primary Beneficiary of this Trust is Mary Lavinia Griffith, for life. Upon
her death, the Secondary Beneficiary shall be:


 1. The legal heirs of Mary Lavinia Griffith

 2. The surviving issue of the legal heirs, should they die prior to termination of
the Trust.


Sanders is the decedent's only child and legal heir.

 After the execution of the irrevocable trust instrument, the decedent executed a will that
purported to leave the 5000-acre ranch to the Council, $1000 to Sanders, and the remaining property to
other individuals.

 The trust instrument was found among the decedent's papers after she suffered a stroke,
which left her incapacitated. When the document was discovered, a line had been drawn through the
words in Article I denoting the "legal heirs of Mary Lavinia Griffith" as the secondary beneficiary, with the
initials "L.G." written beside the strikeout. (3) The designation in Article I of the "legal heirs of Mary Lavinia
Griffith" as the remaindermen was left unaltered. In addition, the designation in Article II of the "legal heirs
of Mary Lavinia Griffith" as the secondary beneficiary also remained unaltered. The decedent died shortly
after the discovery of the trust instrument.

 In its motion for summary judgment, the Council asserted two theories for why it should
recover the ranch. First, the Council argued that the ranch was never validly conveyed into the trust and
therefore never became part of the trust assets; according to this theory, the Council would recover the
ranch under the will. Second, the Council asserted that even if the ranch had been validly conveyed into
the trust, the subsequent execution by decedent of her will leaving the ranch to the Council effectively
constituted an exercise of her power of appointment to change the secondary beneficiary of the trust;
according to this theory, the Council would recover the ranch under the trust by virtue of its status as
secondary beneficiary of the trust. Of principal importance for our purposes is the fact that the Council's
motion does not list as a ground for summary judgment that the decedent exercised her right to change the
secondary beneficiary by striking out the "legal heirs of Mary Lavinia Griffith" in Article I of the trust
document. In fact, that circumstance, even assuming for the sake of argument that it was proven
conclusively by the summary-judgment evidence, is not mentioned anywhere in the Council's motion. (4)

 Sanders's response to the Council's motion argued that summary judgment was improper
because the Council had failed to present competent summary judgment evidence that the decedent died
testate and that the will the Council sought to probate was the decedent's last will. Sanders asserted that
until the will was admitted to probate, it could have no legal effect regarding the disposition of the
decedent's property. In addition, Sanders argued that the language of the decedent's will was not sufficient
to prove conclusively a valid and enforceable exercise of the power of appointment under the trust.

 The Council, in its reply to Sanders's response, argued again that the decedent's will was
sufficient to constitute an effective exercise of the power of appointment reserved in the trust instrument:



The trust instruments are silent as to the manner in which the Trustor (Ms. Griffith) may
change the Secondary Beneficiary. The Boy Scouts of America contends that the naming
of the Boy Scouts in her subsequent Will and Codicil constitutes an effective change in
Secondary Beneficiary (i.e., an exercise of her power of appointment) when viewed in light
of her failure or refusal to deliver the trust instruments to the trustee (or anyone else) and
her marking through the designation of her "legal heirs" on the first page of the trust
instruments.


The last clause in the above-quoted portion of the Council's reply was the first time that the Council, as
movant, had referred to the strikeout at all, yet even there it was mentioned only in a subordinate,
"supporting" role. The primary proposition was that the decedent's naming of the Council as devisee in her
will was the act that constituted a change of the trust's secondary beneficiary.

 The trial court, however, granted summary judgment for the Council on a specific, but
different, basis:



The Court . . . determined that the Boy Scouts of America, Capitol Area Council, is
entitled to Summary Judgment on the basis that Mary Lavinia Griffith's ("Decedent's")
deletion of her legal heirs as secondary beneficiaries under the trust documents . . ., if such
trusts were validly created, constituted an exercise of Decedent's power of appointment. 
The effect of this Court's ruling is that the property has reverted to Decedent's estate.


Beyond this language, the trial court did not expressly rule on the grounds as stated in the Council's motion. 
In her motion for new trial, Sanders argued that the ground on which the trial court granted the summary
judgment was not stated in the Council's motion. After Sanders's motion for new trial was overruled, the
trial court admitted the will to probate.


JURISDICTION



 In its motion for rehearing from our original opinion herein, the Council asserts that the trial
court's order granting partial summary judgment on the characterization of real property is not appealable,
with the result that this Court lacks jurisdiction over Sanders's appeal. The Council relies on Crowson v.
Wakeham, 897 S.W.2d 779 (Tex. 1995), in which the supreme court reformulated the test for determining
which probate orders are appealable: if no statute declares an order concerning a phase of the proceedings
to be final and appealable, a probate order is interlocutory when there is a phase of which the order
logically forms a part, but one or more pleadings that are also part of that phase raise issues or parties that
the order does not dispose of. Id. at 783. We do not read Crowson as eliminating the idea that a probate
matter can proceed in discrete "phases"; rather, we believe the court's holding to be simply that a phase
must generally be completed before an appeal may be taken.

 In the present case, the trial court ordered the case to proceed with the issues grouped as
follows:



(1) the causes of action regarding the validity of the trusts and the will contest shall be
consolidated and tried first; (2) the causes of action seeking declarations construing the
trusts and the will shall be consolidated and tried next; and (3) the claims for
reimbursement and/or damages shall be consolidated and tried only after the above issues
have been determined.


The partial summary judgment in question appears to have completed a phase of the probate proceedings,
either the first or second (or both) of the trial court's three groupings. Even if it did not, however, the
court's later order admitting the will to probate clearly did. With the admission of the will to probate, the
court disposed of all questions concerning both the validity and construction of the trusts and will. 
Accordingly, we will assume without deciding that the partial summary judgment challenged here was not,
itself, an appealable order.

 Sanders timely perfected an appeal from the partial summary judgment. Although she did
not perfect a separate appeal from the order admitting the will to probate, her cost bond relating to the
partial summary judgment constitutes a premature appeal of the later, appealable order. See Yoast v.
Yoast, 649 S.W.2d 289, 291 (Tex. 1983). This Court therefore possesses jurisdiction over Sanders's
appeal and can consider her challenge to the partial summary judgment.

DISCUSSION


 In her first point of error, Sanders contends that the trial court erred in granting summary
judgment on a ground not presented in the motion. Under Texas Rule of Civil Procedure 166a, a motion
for summary judgment must "state the specific grounds therefor," and the trial court is to render judgment
if "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion
or in an answer or any other response." Tex. R. Civ. P. 166a(c); Stiles v. Resolution Trust Corp., 867
S.W.2d 24, 26 (Tex. 1993). A summary judgment may not be granted on a ground not presented in the
motion for summary judgment. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex.
1993); see also Stiles, 867 S.W.2d at 26 (appellate court may not affirm summary judgment on ground
not presented in motion); cf. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79
(Tex. 1979).

 The Council argues that the trial court granted summary judgment on the general basis of
the decedent's exercise of her "power of appointment," which they assert was presented in the motion and
further explained in the reply. It argues that to the extent Sanders had any doubt about the scope of that
ground, she waived any error by failing to object to the specificity of the motion for summary judgment
before the trial court rendered judgment. See Westchester Fire Ins. Co. v. Alvarez, 576 S.W.2d 771,
772-73 (Tex. 1978).

 The failure of a motion for summary judgment to state the specific grounds therefor has
been held to be a defect in form. See id. at 772. The requirement of specificity in rule 166a(c) helps to
provide the nonmovant with sufficient information to define the issues and oppose the motion. Id.; Dear
v. City of Irving, 902 S.W.2d 731, 734 (Tex. App.Austin 1995, writ denied). Thus, where the grounds
presented in the motion are not sufficiently specific to apprise the nonmovant of the issues upon which
summary judgment may be granted, this Court has held that the nonmovant must except to the lack of
specificity or waive the error. University of Texas v. Joki, 735 S.W.2d 505, 507 (Tex. App.Austin
1987, writ denied). A nonmovant, however, does not have a duty to except to a ground not presented in
the motion but which the movant might have relied on as a ground for summary judgment. McConnell, 858
S.W.2d at 342.

 We do not agree with the Council that the ground presented in its motion for summary
judgment was merely the general exercise of the decedent's power of appointment. In our opinion, the
motion unambiguously specified that the relevant ground for summary judgment was the decedent's alleged
exercise of the power of appointment by subsequently executing a will in which she named the Council
as devisee of the ranch. The motion contains numerous references to the decedent's having exercised the
power of appointment "through the terms of" or "under" the will. In the motion, the actual title of the
relevant ground is "Exercise of Reserve Power of Appointment Under the Will." (Emphasis added.) 
Indeed, the motion itself is titled "Capitol Area Council, Boy Scouts of America's Amended Motion for
Partial Summary Judgment on Issues of Characterization of Real Property in Bastrop County, Texas, and
Alternatively, Exercise of Power of Appointment Under Trust Instruments Through Will." (Emphasis
added.) The prayer for relief asked the trial court to declare that "Ms. Griffith, by her Last Will and
Testament, exercised her reserved power of appointment under the trust instrument." (Emphasis added.)

 We conclude that the ground presented in the Council's motion was specific: that the
power of appointment was exercised by executing a will in which the Council was named as devisee of the
ranch. See City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325, 329-30 (Tex. 1969). 
Accordingly, Sanders did not waive error by failing to object to a lack of specificity in the motion. 
McConnell, 858 S.W.2d at 342.

 The Council next contends that this ground was raised with sufficient specificity in its reply
to Sanders's response and was thus properly presented as a ground for the trial court's consideration. We
disagree. The grounds for a motion for summary judgment must be set out in the motion itself. McConnell,
858 S.W.2d at 339-41. By definition, this rule means that, in the absence of the nonmovant's consent, a
movant may not raise a new ground for summary judgment in a reply to the nonmovant's response. For
example, in RR Publication & Production, Inc. v. Lewisville Independent School District, 917 S.W.2d
472, 473 (Tex. App.Fort Worth 1996, no writ), the court held that the trial court erred in granting
summary judgment on a ground first presented in a reply to the nonmovant's response. The court reasoned
that the movant's reply was not a motion expressly presenting independent grounds for summary judgment,
and even if it could be considered a proper motion, it was not filed twenty-one days in advance of the
hearing or with leave of court. Id. at 474.

 The purpose of the time requirements in rule 166a(c), to give the nonmovant notice of all
claims that may be summarily disposed of and the specific grounds on which the movant relies, would be
severely undercut if a movant's "reply" in which new independent grounds were presented could be treated
as an amended motion for summary judgment. For instance, the Council argues that the fact that its reply
was not filed twenty-one days before the hearing or with leave of court would not defeat the summary
judgment because Sanders waived this procedural defect by failing to object. It is true that a nonmovant
may waive a rule 166a(c) notice violation by appearing at the scheduled hearing and failing to object or
request a continuance. Hudenburg v. Neff, 643 S.W.2d 517, 518 (Tex. App.Houston [14th Dist.]
1982, writ ref'd n.r.e.), cert. denied, 462 U.S. 937 (1983). We believe, however, that allowing arguments
made in the movant's reply to be considered, after the fact, as independent grounds for summary judgment
would subvert the orderly process contemplated by rule 166a and put the nonmovant to an unfair burden.

 Moreover, the Council's reply clearly reveals that the existence of the strikeout was raised
only as support for its expressly stated ground: that the execution of decedent's will effectively constituted
an exercise of the trust's power of appointment. Thus, even in the Council's reply, the issue of the strikeout
itself constituting an exercise of the power of appointment was not expressed as an independent ground
for summary judgment. We conclude, therefore, that even if a new independent ground for summary
judgment could validly be raised for the first time in a movant's reply to the nonmovant's response, the
Council's reply here did not adequately state as an independent ground that the strikeout itself was an
exercise of the power of appointment.

 Accordingly, we conclude that the trial court erroneously granted summary judgment on
a ground not set forth in the motion for summary judgment. We sustain Sanders's first point of error.

 In light of our disposition of point of error one, we need not address Sanders's second
point. (5)



CONCLUSION


 We reverse the trial court's summary judgment and remand the cause to that court for
further proceedings.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: September 18, 1996

Publish
1.   The decedent actually executed a total of four trust documents that were almost identical in
their terms. We will refer only to the trust instrument that forms the basis of the present dispute.
2.   Sanders contends it is not a "power of appointment," but a "power of amendment." 
Because the distinction is not important to this appeal, we will use the terminology used in the
trial proceedings.
3.   Beyond the actual markings themselves, there is no summary-judgment evidence
indicating why or when or by whom the strikeout was made.
4.   Because the precise terms of the Council's motion for summary judgment are critical to
our decision, we set forth here at length the relevant language of the motion:


Grounds for Summary Judgment



Characterization of Real Property

 3. The grounds for summary judgment are that there are no genuine issues of
material fact concerning the character of the real property in Bastrop County as property
of the Estate for the following reasons:

* * *


b.  The Griffith Trusts

 (i) With respect to the Griffith Trusts, the Boy Scouts of America are
entitled to summary judgment declaring that the real property in Bastrop County,
Texas, is not property of the Griffith Trusts, but property of the Estate because:

 (a) any attempted conveyance through the alleged trust
instruments that create the Griffith Trusts fails under the statute of
fraud[s] due to inadequate description of the real property purportedly
conveyed thereunder;

 (b) any attempted conveyance through the alleged trust
instruments that create the Griffith Trusts fails because Ms. Griffith
never delivered the purported trust instruments to any individual with
the intention that the instruments operate as a conveyance prior to Ms.
Griffith's death; and

 (c) the Griffith Trusts were created for a fraudulent purpose and
are void as against public policy.


Exercise of Reserve Power of Appointment Under the Will

 4. Alternatively, assuming arguendo that the real property in Bastrop County,
Texas was properly conveyed into one of the McElroy Trusts or Griffith Trusts, the Boy
Scouts of America would be entitled to summary judgment declaring that it is the proper
party entitled to receive the real property under the trust because:

 (i) Under Article VIII of each of the purported trust instruments creating
the McElroy Trusts or the Griffith Trusts, Ms. Griffith reserved the right to
change any secondary beneficiary or alter its right to distribution under the trust;
and

 (ii) Ms. Griffith exercised the power of appointment through the Griffith
Will and, under the terms thereof:

 (a) appointed the Boy Scouts of America as secondary
beneficiary with respect to the real property in Bastrop County, Texas,
and

 (b) altered the disbursement directions to secondary
beneficiaries.

* * *


 WHEREFORE, CAPITOL AREA COUNCIL, BOY SCOUTS OF AMERICA,
prays that the Court enters summary judgment in this cause declaring that the real property
in Bastrop County, Texas, which Mary Lavinia Griffith devised to the Boy Scouts of
America under her Last Will and Testament, is property of the Estate of Mary Lavinia
Griffith and subject to distribution in connection with the administration of the Griffith
Estate. Alternatively, the Boy Scouts of America prays that the Court enters summary
judgment in this case declaring that if the real property is impressed with any trust then Ms.
Griffith, by her Last Will and Testament, exercised her reserved power of appointment
under the trust instrument, and, as a result, the real property should be distributed outright
to the Boy Scouts of America as secondary beneficiary.
5.   In written correspondence to this Court, the Council has conceded that, in light of the fact
that the trial court expressly granted the Council's motion on a specific ground, any argument
that the judgment could be upheld on appeal on a different ground stated in the motion has
been foreclosed by State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
However, the supreme court has recently stated, in dictum, that courts of appeals may, in the interest of
judicial economy, consider summary-judgment grounds that the trial court did not rule on. See
Cincinnati Life Ins. Co. v. Cates, 39 Tex. Sup. Ct. J. 916, 919 (July 8, 1996). Under the
circumstances of the present case, we decline to do so.



>



Characterization of Real Property

 3. The grounds for summa