

## NUMBER 13-12-00763-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

AJAS, INC.,                                                                          Appellant,

v.

IDAHO PACIFIC LUMBER
COMPANY, INC.,                                                                   Appellee.

### On appeal from the 267th District Court
### of Jackson County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Wittig
### Memorandum Opinion by Justice Wittig

Ajas, Inc. ("Ajas"), appellant, asks us to reverse the summary judgment, lien foreclosure, and award of attorney's fees rendered against it by the trial court. We reverse and remand.

## I. BACKGROUND[1]

Idaho Pacific Lumber Company, Inc. ("Idaho"), appellee, brought suit against DaRam Companies ("DaRam") and its guarantor Kirk Countryman based upon a credit contract between Idaho and DaRam. Idaho delivered materials to DaRam on a construction project. Idaho was granted a summary judgment against DaRam, Countryman, and Ajas based upon the contract plus attorney's fees, and foreclosure of various materialman's liens. No responses were filed to the summary judgment motion, and the trial court granted the motion in its entirety. Only Ajas appealed.

In three issues, Ajas argues that there was no pleading or evidence that it owed any duty to Idaho, there were no pleading or evidence of a contract, there was no basis to allow foreclosure of a mechanic's lien, and that the trial court erred in awarding attorney's fees.

## II. STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well-established. *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 923 (Tex. App.—Dallas 2005, no pet.). An appellate court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law*. Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003); *First Union*, 168 S.W.3d at 923. When reviewing a motion for summary judgment, the appellate court takes the nonmovant's evidence as true,

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2013 3d C.S.).

indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor of the nonmovant. *Provident Life*, 128 S.W.3d at 215; *First Union*, 168 S.W.3d at 923. When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life*, 128 S.W.3d at 216; *First Union*, 168 S.W.3d at 923. A summary judgment cannot be affirmed on grounds not expressly set out in the motion or response. *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

Because a summary judgment is a summary trial of a claim, our rules and law require that a party may secure a summary judgment only on those grounds specifically named and discussed in the motion. *See Wright v. Sydow*, 173 S.W.3d 534, 554 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993)). This is a notice requirement, intended to notify the claimant and the trial court of those claims or elements of claims the opponent is attacking. *See id.* A trial court can enter a summary judgment only against those claims attacked in a motion for summary judgment. *See id.*

### III. THE SUMMARY JUDGMENT

Ajas argues there was no or insufficient evidence to show it owed a duty to pay Idaho and that no pleading or evidence showed any contract between the parties. Idaho's petition at its core claimed a contract with DaRam and that the contract was personally guaranteed by Countryman. The only stated claim against Ajas is for the foreclosure of a materialman's lien. While Idaho describes Ajas as a property owner where the materials were alleged to have been used, there is no proof of this allegation. However, as Idaho

3

points out, Ajas seems to admit at least ownership of the property in its brief at page 11.[2]

Ajas cites *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23, (Tex. 1999), holding that "the nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense." (citing *Oram v. Gen. Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974); *Swilley v. Hughes*, 488 S.W.2d 64, 67–68 (Tex. 1972)). The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally insufficient. *Steel*, 997 S.W.2d at 223 (*citing City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). "The movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law." *Steel*, 997 S.W.2d at 223 (citing *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)*; City of Houston*, 589 S.W.2d at 678).

While Ajas asked for a continuance for improper notice, it did not otherwise respond. As Ajas points out, however, neither in Idaho's petition nor its motion for summary judgment did it specify a basis for legal responsibility for the debt as to Ajas. Ajas further argues that in addition to an absence of a theory of liability, no evidence to support liability was presented. At best, Ajas argues, Idaho is a subcontractor and derivative claimant who must rely upon statutory lien remedies. "Because a subcontractor is a derivative claimant and, unlike a general contractor, has no constitutional, common law, or contractual lien on the property of the owner, a subcontractor's lien rights are

---

[2] The resolution of this argument is not necessary to our disposition of this issue, and the liens offer at least some evidence of ownership. *See* T.R.C.P. 47.1.

4

totally dependent on compliance with the statutes authorizing the lien." *First Nat'l Bank in Graham v. Sledge*, 653 S.W.2d 283, 285 (Tex. 1983). We agree. We find no pleading or proof for a direct action against Ajas based upon debt.

Idaho seeks to refute Ajas's arguments by saying it waived all complaints. In particular, under Texas Rule of Civil Procedure 93, Ajas did not file verified denials regarding the legal capacity to be sued, a defect in parties, or a failure of consideration. *See* TEX. R. CIV. P. 93. While we generally agree with this proposition, this does not address Ajas's legal sufficiency argument.

Idaho argues that the failure of a motion for summary judgment to specify grounds is a defect of form that is waived unless excepted to prior to rendition of judgment, citing *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 773 (Tex. 1978) (in turn relying upon *The Life Ins. Co. of Va. v. Gar-Dal, Inc.*, 570 S.W.2d 378 (Tex. 1978)); *see also McConnell*, 858 S.W.2d at 342. But in *Westchester Fire*, the record and the affidavits attached to the motion undisputedly establish that Westchester Fire Insurance Company had paid Mrs. Alvarez more than $10,000 in workers' compensation benefits and was therefore subrogated to the rights of Mrs. Alvarez for $10,000 under worker's compensation law. *See 576 S.W.2d at 773.* At the same time, the high court also expressly stated that the underlying purpose of the requirement to specify grounds "is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment." *Id.* at 772.

The supreme court has addressed this issue on multiple occasions. *See McConnell*, 858 S.W.2d at 341, *see also Amedisys, Inc. v. Kingwood Home Health Care*, LLC, 437 S.W.3d 507, 511 (Tex. 2014); *G & H Towing Co. v. Magee*, 347 S.W.3d 293,

5

297 (Tex. 2011); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997).

"Consistent with the precise language of Rule 166a(c), we hold that a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *McConnell*, 858 S.W.2d at 341.

In *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306 (Tex. 2009), the high court seemingly limits or clarifies *Westchester Fire* by holding that "[t]he underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Id.* at 311 (citing *Westchester Fire*, 576 S.W.2d at 772). The supreme court went on to hold: "[w]e have analogized this purpose to that of the 'fair notice' pleading requirements of Rules 45(b) and 47(a). *Id.* at 772–73; *see also* TEX. R. CIV. P. 45(b) (requiring a party's pleadings to give "fair notice" to the opponent); *Id.* at 47(a) (requiring a plaintiff's pleadings to give "fair notice of the claim involved").

In both *Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002), and *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 204 (Tex.1997), the high court held that it is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion. There, it was held that when the motion for summary judgment clearly presents certain grounds but not others, a non-movant is not required to except.

> This distinction was recognized and correctly resolved in *Roberts v. Southwest Texas Methodist Hospital*, when the court held: When a motion for summary judgment asserts grounds A and B, it cannot be upheld on grounds C and D, which were not asserted, even if the summary judgment proof supports them and the responding party did not except to the motion. 811 S.W.2d at 141, 146 (Tex.App.—San Antonio, 1991, pet. denied). Why

6

should a non-movant be required to except to a motion expressly presenting certain grounds and not others?  The only effect of such a rule would be to alert the movant to additional unasserted grounds for summary judgment.  Consequently, we conclude that Rule 166a(c) does not require a non-movant to except in this situation.

*Id.*  Such is the case here where Idaho pursued summary judgment against DaRam and Countryman on breach of contract and a personal guarantee while making no specific allegations against Ajas other than the general claim for foreclosure of the materialman's lien.

We conclude Ajas did not waive this issue by failing to except where neither Idaho's petition nor its motion for summary contained fair notice of a non-derivative claim for debt. *See id.*

Idaho cites *State v. Lot 10, Pine Haven Estates*, 900 S.W.2d 400, 401, (Tex. App.—Texarkana 1995, no writ), for the proposition that a failure to file a response does not authorize a summary judgment by default, but in the absence of a response expressly presenting to the trial court reasons for avoiding the movant's right to summary judgment, those matters may not be raised for the first time on appeal.   However, it was precisely because the State failed to satisfy the statutory requirements in its pleadings or otherwise that summary judgment was granted against its attempted forfeiture.  *Id.* at 402.  "There is no question in the present case that the State failed to meet the explicit requirements of the statute.  The State did not commence proceedings against the property seized within thirty days of the date of its seizure."  *Id.*

Idaho cites *Anderson v. Varco Int'l, Inc.*, 905 S.W.2d 26, 28 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing McConnell 858 S.W.2d at 343), stating that when a party does not file a response to a summary judgment, the only ground for reversal it may

7

raise on appeal is an attack on the legal sufficiency of the movant's summary judgment proof. We agree and note that the essential challenge in Ajas's first issue is to the legal sufficiency. In *McConnell*, the high court also held that an exception is required "should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous." 858 S.W.2d at 342. While we agree, the court went on to explain: "[h]owever, summary judgments must stand or fall on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *Id.* at 343 (citing *Clear Creek*, 589 S.W.2d at 678). Furthermore, "[i]f a non-movant fails to present any issues in its response or answer, the movant's right is not established and the movant must still establish its entitlement to summary judgment." *Id.* Without a response, the non-movant is limited on appeal to arguing the legal sufficiency of the grounds presented by the movant. *Id.*; *see also Washington v. McMillan*, 898 S.W.2d 392, 395 (Tex. App.—San Antonio 1995, no pet.) (stating that if a motion is legally sufficient, the non-movant must bring forward sufficient controverting proof to raise a material fact issue); *Scott v. Galusha*, 890 S.W.2d 945, 949 (Tex. App.—Fort Worth, 1995, writ denied) ("While the nonmovant need not file an answer or response to the summary judgment motion, on appeal he may only contend that the movant's motion was insufficient as a matter of law.")

Finally, Idaho cites *Private Mini Storage Realty, L.P. v. Larry F. Smith, Inc.*, 304 S.W.3d 854, 861 (Tex. App.—Dallas, 2010, no pet.), demonstrating that the evidence was legally and factually sufficient to support an award of damages. In this case, Smith testified that the amount he was owed on a project was $593,323.38, and that he was paid $513,331.63. *Id.* Subtracting the amount paid from the amount owed leaves

8

$79,991.75, which is the amount the trial court awarded. *Id.* The court held that Smith's testimony constituted some evidence in support of the damages awarded. *Id.* However, in the cited case, the trial court had previously partially granted Smith's summary judgment, ruling that Smith established appellants' liability as a matter of law under a mechanic's and materialman's lien for unpaid work and on its claim for the retained funds pursuant to the subcontract. *Id.* at 857. The trial court ordered the case set for trial to determine only the amount of damages, if any, Smith was entitled to recover. *Id.* The sufficiency finding was specifically limited, and the trial to the court was held to determine the damages under the lien and retained funds liability already established. Thus, this holding is inapplicable in our summary judgment context. *See id.* Even assuming evidence of damages, we find no pleading or evidence to support a direct action against Ajas.

## IV. LIEN FORECLOSURE

In its second issue, Ajas argues the trial court erred in granting Idaho's foreclosure on its alleged mechanic's lien(s). According to Ajas, a derivative claimant such as Idaho can only have protection of a mechanic's lien if it follows the statutory scheme, citing *Lonergan v. San Antonio Loan & Trust Co.*, 104 S.W. 1061, 1069 (Tex. 1907). ("The proceeding prescribed by the statute by which a materialman is permitted to fix a lien for material furnished by him . . . does not create a debt against the owner of the property, but operates as a writ of garnishment would, and appropriates so much of the money in the hands of the owner as is then due and payable, or may become due and payable, to the contractor to the extent necessary to satisfy that claim."). Idaho cites *Stolz v.*

9

*Honeycutt*, 42 S.W.3d 305, 310 (Tex. App.—Houston [14th Dist.] 2001, no pet.)[3] stating the same principal and noting that the two main statutory schemes providing such rights to spurned subcontractors are: (1) the "Trapping Statute," TEX. PROP.CODE ANN. §§ 53.081–.085 (West, Westlaw through 2013 3d C.S.); and (2) the "Retainage Statute," *Id.* §§ 53.101–.106.2. At the same time, "[b]ecause a subcontractor is a derivative claimant and, unlike a general contractor, has no constitutional, common law, or contractual lien on the property of the owner, a subcontractor's lien rights are totally dependent on compliance with the statutes authorizing the lien." *Sledge*, 653 S.W.2d at 285 (also holding substantial compliance may suffice.)[4]

Still, Ajas maintains that Idaho failed to allege or offer any proof of statutory compliance. The amounts claimed are not ascertainable. There is no pleading or proof of any contract amount, what trapped funds, if any, were paid to the general contractor, or any fact giving rise to the proper lien amount or the right to foreclose. Ajas also argues lack of required statutory notices to the owner. We examine these matters.

The affidavit of Eric Grandeen in support of Idaho's summary judgment motion addresses the credit agreement between it and DaRam, that materials were sold for construction of the undescribed "subject property" owned by Ajas, and that the amounts owed at the time of filing the lien affidavits were $11,877.93, $4,059.38, $33,354.45 and $1,783.68 totaling $51,075.44. The lien affidavits were filed March 14, April 15, May 12, and June 14, 2011, respectively. Grandeen's affidavit states DaRam agreed to pay but these amounts were not paid. Countryman signed a personal guarantee to the credit

---

[3] *Stolz* is also cited for the proposition that a subcontractor could bring a direct action to enforce its mechanic's lien where its notice complied with statutory requirements. *See*, 42 S.W.3d at 310.

[4] See below where the same court specifically required notices necessary for a valid lien which were not provided by Idaho. *See Sledge*, 653 S.W.2d at 285.

10

agreement. The affidavits for mechanic's and materialman's lien indicate the material was furnished to improve the Ganado Hotel on West York Street in Ganado, Texas and the materials were furnished to DaRam of Houston, Texas. The only other proof provided was an affidavit which offered some proof of attorney's fees and copies of demand letters. Other than the credit agreement, the summary judgment proof does not contain any terms or amounts of any other contracts between either Idaho and DaRam or DaRam and Ajas.

With regard to the Trapping Statute, when an owner receives proper notice that the original contractor has failed to pay funds owed on work done on the property, the owner may withhold payments to the contractor in an amount sufficient to cover the claim for which he received notice. *See* TEX. PROP. CODE ANN. § 53.081. If the owner pays any of the "trapped" funds to the contractor after receiving notice, the claimant may obtain a lien on the property to the extent of the money paid. *See id.* § 53.084(b); *Sledge,* 653 S.W.2d at 286. There is no proof Ajas paid any such funds to DaRam.

To perfect this lien, "a person must comply with this subchapter." TEX. PROP. CODE ANN. § 53.051. The subchapter requires that in order to authorized the owner to withhold funds, the notice to the owner must state that if the claim remains unpaid, the owner may be personally liable and the owner's property may be subjected to a lien unless the owner withholds payments from the contractor for payment of the claim or the claim is otherwise paid or settled. *Id.* § (d)(1), (2); *see also Sledge,* 653 S.W.2d at 287 (holding that a lien was not perfected where invoices were not attached and notices did not contain statutory notice that "he might be held personally liable and his property subjected to a lien."). There is no pleading or evidence that these statutory requirements were met. Thus, this lien foreclosure action fails for lack of legal sufficiency.

11

It should also be noted that the owner is not liable for any amount paid to the original contractor before the owner is authorized to withhold funds under this subchapter. TEX. PROP. CODE ANN. § 53.084. Here, there is no proof of the amount of any contract to supply labor or materials, no invoices are attached, and there is no evidence of any amounts retained, owed, or paid by Ajas.[5]

Second, the Retainage Statute provides protection that is in some ways broader in application, but also potentially more limited in monetary terms than the Trapping Statute. *Stolz*, 42 S.W.3d at 311. Under section 53.101, an owner under an original contract on which a mechanic's lien may be claimed is required to retain in his possession ten percent of the contract price, or ten percent of the value of the work, for thirty days after the work is completed. TEX. PROP. CODE ANN. § 53.101(a). A claimant may then secure a lien on the retained funds if he provides the owner with proper notice under the statute and files an affidavit claiming a lien no later than the 30th day after the work was completed. *Id.* § 53.103.

Ajas points out that Idaho may have waived any retainage because in its credit contract with DaRam it specifically states: "[u]nder no circumstances does Seller accept retainages to be held on materials supplied." In any event, section 53.105 limits the owner's liability to the amount that the owner failed to retain:

OWNER'S LIABILITY FOR FAILURE TO RETAIN.

(a)     If the owner fails or refuses to comply with this subchapter, the claimants complying with Subchapter C or this subchapter have a lien, at least to the extent of the amount that should have been retained from the original contract under which they are claiming, against the house, building, structure, fixture, or improvement and all

---

[5] We note that the credit contract between Idaho and DaRam was dated October 18, 2010. While there is some evidence of materials supplied to DaRam in the amount of $51,075.44, there is no evidence of the amounts paid, retained, or owed, if any, to DaRam by Ajas.

12

of its properties and against the lot or lots of land necessarily connected.

(b)     The claimants share the lien proportionately in accordance with the preference provided by Section 53.104.

*Id.* § 53.105. Neither Idaho's petition nor summary judgment proof provide any basis for determining the amount of this lien, the amount required to be retained, whether there was any retainage, whether Ajas failed or refused to comply, and the amount of Idaho's proportional share, if any. Nor is there any evidence of an original contract between Ajas and Idaho which serves as the basis for determining the amount, if any, of any such retainage or lien. *See id.*

Idaho argues Ajas filed only a general denial and failed to file any verified special denials, affirmative defenses or special exceptions. It cites *Occidental Nebraska Federal Savings Bank v. East End Glass Co.*, 773 S.W.2d 687, 688 (Tex.App.—San Antonio, 1989, no writ), holding that under Texas Rule of Civil Procedure 54 a condition precedent generally pled is sufficient, however, when so plead, the claimant only has to prove those specifically denied. Here, Idaho did not plead that all conditions precedent to foreclosing the lien had been met. In paragraph IV of Idaho's petition, it alleged that it had a contract with DaRam and that "[p]laintiff has fully performed all of its obligations under the contract, and all conditions precedent to Plaintiff's right of recovery have been perform or have occurred." A fair reading under the four corners test would denote that the reference is to the breach of contract actions, not to its lien foreclosure action separately pled. *See, e.g. Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014) (stating that "interpretations of contracts as a whole are favored so that none of the language in them

is rendered surplusage"). This is reinforced by the fact that it is in paragraph VI, not paragraph IV, that Idaho addresses its request to foreclose its liens.

Similarly, Idaho argues under *Wade & Sons, Inc. v. American Standard, Inc.*, 127 S.W.3d 814, 825 (Tex. App.—San Antonio, 2003, pet. denied), that Rule 54 provides that in pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. "Trane states that '[t]his is a suit to foreclose on a Bond to Indemnify Against Lien and a suit on sworn account. All conditions precedent have been performed or have occurred.'" *Id.* "This language sufficiently placed Consolidated on notice of Trane's suit and of Trane's performance or occurrence of all conditions precedent." *Id.*

Again, Idaho lacked such a pleading and failed to give Ajas fair notice that it claimed all conditions precedent had occurred *in order to foreclose the lien*. *See Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007) (stating that Texas follows a "fair notice" standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy).

Idaho also argues that the materialman's lien statute is liberally construed for the purpose of protecting laborers and materialmen. *Wesco Distribution, Inc. v. Westport Grp., Inc.*, 150 S.W.3d 553, 557 (Tex. App.—Austin 2004, no pet.). We agree. However, this same case also holds: "[h]owever, 'substantial compliance' is not a license to ignore statutory requirements." *Id.* at 559; *cf. Raymond v. Rahme*, 78 S.W.3d 552, 560 (Tex. App.—Austin, 2002, no pet.) (stating that if the subcontractor does not give the owner timely notice containing the statutory warning, the lien is invalid). We find that Idaho failed

to substantially comply with the statutory and fair notice requirements and did not supply legally sufficient evidence to support these lien claims in the summary judgment context.

## V. CONCLUSION

We sustain Ajas's first two issues. We need not address the issue of attorney's fees, there being no basis for such a recovery. We reverse and remand.


/s/ Don Wittig
Assigned Justice


Delivered and filed the
14th day of May, 2015.